FOLLETT CORPORATION, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Fourth District    No. 4—02—0938

Argued October 15, 2003.—Opinion filed November 13, 2003.

Marilyn A. Wethekam and Brian L. Browdy (argued), both of Horwood, Marcus & Berk, Chtrd., of Chicago, and Joseph E. McMenamin, of Dunn & McMenamin, of Springfield, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Laura M. Wunder (argued), Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE MYERSCOUGH delivered the opinion of the court:

In October 1999, the Illinois Department of Revenue (Department) assessed plaintiff, Follett Corporation (Follett), a tax deficiency for tax years 1995, 1996, and 1997. The Department concluded that certain out-of-state sales made by plaintiff were subject to the sales "throw-back" rule in the Illinois Income Tax Act (Income Tax Act) (35 ILCS 5/304(a)(3)(B)(ii) (West 2000)) and, therefore, should be considered as Follett's Illinois sales in determining Follett's tax liability. Follett paid the tax under protest and filed a complaint in the trial court under the State Officers and Employees Money Disposition Act (30 ILCS 230/1 through 6a (West 2000)) to challenge the Department's assessment. In its complaint, Follett named the Depart-

ment, its Director, and the State Treasurer as defendants and sought injunctive and declaratory relief. Follett and the Department then moved for summary judgment on the question of whether the sales "throw-back" rule applies to the sales at issue. In October 2002, the trial court granted summary judgment to the Department, concluding that the "throw-back" rule applies to the sales in question. Follett appeals, arguing the "throw-back" rule is not applicable. We affirm.

## I. BACKGROUND

### A. Factual Background

Follett, an Illinois corporation, has its headquarters in River Grove, Illinois. Follett provides a wide variety of products and services to schools, educators, libraries, and federal agencies and institutions through its affiliates and divisions. Follett and some of its affiliates operate as a unitary business group (hereinafter Follett Group). From 1995 to 1997, Follett made sales of goods that were delivered to other states in which Follett itself was not subject to tax, but another member of the Follett Group, Follett College Stores Corporation (Follett Stores), was taxed. Follett did not include these sales in its Illinois sales calculation, believing the Illinois sales "throw-back" rule was not applicable to these sales.

The Department, after conducting audits of the tax returns provided by Follett and its affiliates, determined that Follett should have included these sales in its Illinois sales calculation. The Department assessed Follett total unpaid tax liability of $341,363 for the 1995, 1996, and 1997 tax years relating to the application of the sales "throw-back" rule. The question before this court is whether the Department correctly applied the Illinois "throw-back" rule in assessing Follett the $341,363 tax deficiency.

### B. Legal Background

#### 1. *Unitary Business Group*

■ The Income Tax Act defines the term "unitary business group" as "a group of persons related through common ownership whose business activities are integrated with, dependent upon[,] and contribute to each other." 35 ILCS 5/1501(a)(27) (West 2000). Members of the group will not necessarily be subject to taxation by the same state or states.

For taxable years ending on or after December 31, 1993, section 502(e) of the Income Tax Act requires corporate members of the same unitary business group to be

> "treated as one taxpayer for purposes of any original return, amended return which includes the same taxpayers of the unitary

group which joined in the election to file the original return, extension, claim for refund, assessment, collection and payment and determination of the group's tax liability under this Act." 35 ILCS 5/502(e) (West 2000).

■ In this case, Follett and some of its affiliates, including Follett Stores, constituted a "unitary business group" as the term is defined in section 1501(a)(27) of the Income Tax Act. 35 ILCS 5/1501(a)(27) (West 2000). The Follett Group filed combined tax returns for determination of the group's tax liability as required by section 502(e) of the Income Tax Act (35 ILCS 5/502(e) (West 2000)).

## 2. *Apportionment of a Taxpayer's Illinois Income*

■ Section 304(a) of the Income Tax Act states:

"If a person other than a resident derives business income from this State and one or more other states, then, for tax years ending on or before December 30, 1998, and except as otherwise provided by this [s]ection, such person's business income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the sum of the property factor (if any), the payroll factor (if any)[,] and 200% of the sales factor (if any), and the denominator of which is 4 reduced by the number of factors other than the sales factor which have a denominator of zero and by an additional 2 if the sales factor has a denominator of zero." 35 ILCS 5/304(a) (West 2000).

The property factor, the payroll factor, and the sales factor are all fractions: the property factor compares the average value of the "person's" property value in Illinois during the year to the value of its property everywhere; the payroll factor compares the amount of compensation the "person" paid in Illinois during the year to the amount of compensation it paid everywhere; and the sales factor compares the "person's" sales in Illinois during the year to its sales everywhere. 35 ILCS 5/304(a)(1) through (a)(3) (West 2000).

The parties maintain that this fraction formula can be expressed as follows:

|  | Illinois Property | Illinois Payroll | Illinois Sales | Illinois Sales |
|---|---|---|---|---|
|  | ------- + | ------- + | ------- + | ------- |
| Illinois Apportionment= | Property Everywhere | Payroll Everywhere | Sales Everywhere | Sales Everywhere |

$$\frac{4}{}$$

■ If a taxpayer is a member of a unitary business group that conducts some of its business in Illinois, section 304(e) of the Income

Tax Act requires the use of the combined-apportionment method to determine the amount of business income that is attributable to Illinois by such a taxpayer. 35 ILCS 5/304(e) (West 2000). The Income Tax Act itself does not define what is the combined-apportionment method. The Supreme Court of Illinois, however, prescribed how to apply the combined-apportionment method under section 304(a) to determine an individual corporation's share of the group's Illinois income-tax liability in *General Telephone Co. of Illinois v. Johnson*, 103 Ill. 2d 363, 371-72, 469 N.E.2d 1067, 1071 (1984), as follows:

> "First, the business income of each corporate member of the group would be computed so that the total business income of the group could be derived. Then, to determine the apportionment factor for a group member subject to the Illinois income tax, the property, payroll, and sales factors would be computed by using the individual *group member's* Illinois property, payroll, and sales as numerators, and the *entire unitary group's* property, payroll, and sales as denominators. The average of these three factors would be the group member's apportionment factor. This apportionment factor then would be applied to the group's total business income to derive the amount of business income on which the group member would pay Illinois income tax." (Emphases in original.)

Follett points out that the combined-apportionment factor formula can be expressed as follows:

| | Individual Member's Illinois Property | Individual Member's Illinois Payroll | Individual Member's Illinois Sales |
|---|---|---|---|
| | ------- + | ------- + | ------- |
| Individual Member's Illinois = Apportionment | Group's Everywhere Property | Group's Everywhere Payroll | Group's Everywhere Sales |

3

See *General Telephone Co.*, 103 Ill. 2d at 371, 469 N.E.2d at 1071.

### 3. *Illinois Sales and the Sales "Throw-Back" Rule*

■ Section 304(a)(3)(B) of the Income Tax Act provides as follows:

"Sales of tangible personal property are in this State if:

(i) The property is delivered or shipped to a purchaser, other than the United States government, within this State regardless of the f.o.b. point or other conditions of the sale; or

(ii) The property is shipped from an office, store, warehouse, factory[,] or other place of storage in this State and either the

purchaser is the United States government or the person is not taxable in the state of the purchaser; provided, however, that premises owned or leased by a person who has independently contracted with the seller for the printing of newspapers, periodicals[,] or books shall not be deemed to be an office, store, warehouse, factory[,] or other place of storage for purposes of this [s]ection. Sales of tangible personal property are not in this State if the seller and purchaser would be members of the same unitary business group but for the fact that either the seller or purchaser is a person with 80% or more of total business activity outside of the United States and the property is purchased for resale." 35 ILCS 5/304(a)(3)(B) (West 2000).

This second provision, subsection (ii), is known as the sales "throw-back" rule because it treats certain out-of-state sales of a "person" as Illinois sales for the purpose of calculating that "person's" sales factor and its Illinois apportionment.

### C. The Dispute Between Follett and the Department

Follett and the Department disagree on how the "throw-back" rule should be applied, specifically, what is the meaning of the word "person" in section 304(a)(3)(B)(ii) of the Income Tax Act (35 ILCS 5/304(a)(3)(B)(ii) (West 2000))?

Follett argues, when applying the combined-apportionment method to determine an amount of business income on which a group member would pay Illinois income tax, the word "person" in the "throw-back" provision should mean the entire unitary business group. Therefore, even though Follett made sales to purchasers in the states where Follett itself was not subject to income tax, such sales should nevertheless not be "thrown back" to Illinois since another member of the Follett group, Follett Stores, was subject to income tax in those states.

The Department argues, and the trial court agreed, the word "person" in the sales "throw-back" rule does not refer to the entire unitary business group. Instead, the word "person" refers to an individual corporate member in the group. Because Follett, as the "person," was not subject to tax in certain states, its sales to those states should be "thrown back" to Illinois in calculating its Illinois sales and its Illinois combined-apportionment factor.

### II. ANALYSIS

#### A. Standard of Review

■ This appeal involves the construction and application of the Illinois sales "throw-back" rule in the Income Tax Act (35 ILCS 5/304(a)(3)(B)(ii) (West 2000)). When no factual dispute is involved

and the question on appeal is only the application of the law to the undisputed facts, the standard of review is *de novo*. *People v. Mitchell*, 165 Ill. 2d 211, 230, 650 N.E.2d 1014, 1023 (1995).

## B. The Statutory Language in the Income Tax Act Supports the Department's Reading of the "Throw-Back" Statute

■ The Supreme Court of Illinois has stated in *People v. Boykin*, 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175 (1983), to correctly construe and apply a statute, we must first ascertain and give effect to the intent of the legislature. In determining the legislative intent, courts should first consider the statutory language. *Boykin*, 94 Ill. 2d at 141, 445 N.E.2d at 1175. In addition, courts should give consideration to all the words of the provision, so that no word or clause is rendered meaningless or superfluous. *People v. Singleton*, 103 Ill. 2d 339, 345, 469 N.E.2d 200, 203 (1984).

### 1. *The Income Tax Act Defines the Term "Person" as a "Corporation," Not as a "Unitary Business Group"*

■ Section 1501(a)(18) of the Income Tax Act states: "The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, firm, company, corporation, limited liability company, or fiduciary." 35 ILCS 5/1501(a)(18) (West 2000). Such a definition requires us to interpret the term "person" as each individual corporate member of a unitary business group, but this definition does not support Follett's argument that the term "person" refers to the group itself.

### 2. *The Language in the "Throw-Back" Provision Indicates the Term "Person" Refers to an Individual Corporation*

■ We conclude the language in the last sentence of the sales "throw-back" provision demonstrates the legislature's intent that, when a corporation is a member of a unitary business group, we must analyze each out-of-state sale at the individual corporate member's level to determine whether such a transaction is an Illinois sale. As a result, we should interpret the term "person" as each individual corporation rather than the entire unitary business group.

The last sentence of the "throw-back" provision states:

> "Sales of tangible personal property are not in this State if the seller and purchaser would be members of the same unitary business group but for the fact that either the seller or purchaser is a person with 80% or more of total business activity outside of the United States and the property is purchased for resale." 35 ILCS 5/304(a)(3)(B)(ii) (West 2000).

In 1982, the legislature added this sentence to the "throw-back"

statute to exclude from the apportionment calculation all sales by any member whose activities are carried on primarily outside of the United States. Pub. Act 82—1029, § 1, eff. December 15, 1982 (1982 Ill. Laws 2946, 2954). Thus, the Illinois legislature clearly regards the seller and purchaser of a sales transaction as individual corporations instead of unitary business groups, since unitary business groups cannot be "members of the same unitary business group." Therefore, the above sentence in the "throw-back" provision governs an individual corporation's sale to another individual corporation, rather than a unitary business group's sale to a third-party purchaser.

If, as Follett argues, when a "unitary business group" is involved, the word "person" in the "throw-back" provision refers to the entire group, then the sales "throw-back" rule would govern the sales of the entire group to a third party. As demonstrated above, such a reading does not give effect to the language set forth in the last sentence, and it conflicts with the legislature's intent.

### 3. The Statutory Language in Other Provisions of the Income Tax Act Also Indicates the Word "Person" Refers to an Individual Corporation

In addition to the "throw-back" statute itself, language in other provisions of the Income Tax Act also supports reading the term "person" as an individual corporation rather than as a unitary business group.

The Income Tax Act defines a "unitary business group" as "a group of persons" who are "related through common ownership" and "whose business activities are integrated with, dependent upon[,] and contribute to each other." 35 ILCS 5/1501(a)(27) (West 2000). Therefore, the statute specifies that each individual corporate member of a unitary business group is a "person," but the group itself is not.

Section 304(e) of the Income Tax Act requires the use of the combined-apportionment method, when "2 or more persons" are engaged in a unitary business, a part of which is conducted in Illinois. 35 ILCS 5/304(e) (West 2000). The language in this provision also indicates the Illinois legislature's intent that the term "person" refers to each individual member of a unitary business group.

Follett argues section 502(e) of the Income Tax Act supports its reading of the term "person" in the "throw-back" statute as a unitary business group. 35 ILCS 5/502(e) (West 2000). Section 502(e) states:

> "For taxable years ending on or after December 31, 1993, taxpayers that are corporations (other than Subchapter S corporations) and that are members of the same unitary business group shall be treated as one taxpayer for purposes of any original return,

amended return which includes the same taxpayers of the unitary group which joined in filing the original return, extension, claim for refund, assessment, collection and payment and determination of the group's tax liability under this Act." 35 ILCS 5/502(e) (West 2000).

Follett states that, because the Income Tax Act defines the term "taxpayer" as "any person subject to the tax imposed by this Act" (35 ILCS 5/1501(a)(24) (West 2000)), the above section can be construed to read as follows:

"*Persons who are subject to the tax imposed by this Act* that are corporations (other than Subchapter S corporations) and that are members of the same unitary business group shall be treated as *one person that is subject to the tax imposed by this Act* for purposes of any original return, amended return which includes the same taxpayers of the unitary business group which joined in filing the original return, extension, claim for refund, assessment, collection and payment and determination of the group's tax liability under this Act." (Emphases added.)

Because Follett and Follett Stores are both "persons who are subject to the tax imposed by this Act," Follett suggests section 503(e) operates to treat Follett and Follett Stores as "one person subject to the tax imposed by this Act." Follett thus concludes that the sales "throw-back" rule is inapplicable to the sales in question since Follett and Follett Stores, as "one person subject to the income tax," is taxable in each of the sales states. We disagree.

Although section 503(e) of the Income Tax Act states that members of a unitary business group should be treated as "one taxpayer," such a treatment is only for the purpose of determining "the *group's* tax liability under this Act." (Emphasis added.) 35 ILCS 5/502(e) (West 2000). It does not apply to a situation where an individual corporate member's Illinois income-tax liability is in question. Therefore, even if we accept Follett's suggestion that the definition of the term "taxpayer" allows section 503(e) to treat several members of a unitary business group as "one person subject to the income tax" for section 503(e) purposes, such an operation should not apply to the calculation of an individual member's apportionment factor or its individual Illinois sales.

A study of the legislative history further verifies that the Illinois legislature intended for section 502(e) to govern only the determination of a unitary business group's group tax liability. In 1984, the General Assembly passed a law embodying what ultimately became section 502(e). Pub. Act 83—1289, § 1, eff. August 31, 1984 (1984 Ill. Laws 1340, 1342). That law was basically the same as the current

provision, except instead of the phrase "determination of the group's liability," the language in that first law was "payment of the sum of what would be their separate tax liabilities." Pub. Act 83—1289, § 1, eff. August 31, 1984 (1984 Ill. Laws 1340, 1342). Before the first law went into effect, the General Assembly passed a second law that included the phrase "determination of the group's tax liability" superseding it. Pub. Act 84—221, art I., § 4, eff. September 1, 1985 (1984 Ill. Laws 1935, 1942). This change of language strongly indicates the legislature's determination that section 502(e) does not apply to an individual corporate member's own separate Illinois income-tax liability.

### C. Reading the Term "Person" as an Individual Corporation Is Also Consistent with the Illinois Supreme Court's Decisions

As discussed above, although the Income Tax Act itself does not define the "combined-apportionment method," the Illinois Supreme Court has determined how the combined-apportionment method should be applied under section 304(a). *General Telephone Co.*, 103 Ill. 2d at 371, 469 N.E.2d at 1071. The supreme court stated, in deciding the separate tax liability of a member of a unitary group, the sales factor consists of a denominator, which is the entire group's nationwide sales, and a numerator, which is that individual member's Illinois sales.

In this case, the question before this court is whether the sales "throw-back" statute applies to Follett's individual out-of-state sales, or in other words, what is the correct numerator of Follett's sales factor? The combined-apportionment formula prescribed by the Illinois Supreme Court requires that, in calculating a corporate member's Illinois sales factor, the numerator be that individual corporation's sales, not the entire unitary business group's sales. Therefore, to correctly determine Follett's individual Illinois sales, we must construe the term "person" in the sales "throw-back" provision as Follett, not the Follett Group.

We do recognize, however, an inconsistency between the statutory language and the combined-apportionment formula. Section 304(a)(3)(A) of the Income Tax Act states, in calculating the apportionment factor: "[t]he sales factor is a fraction, the numerator of which is the total sales of the *person* in this State during the taxable year, and the denominator of which is the total sales of the *person* everywhere during the taxable year." (Emphases added.) 35 ILCS 5/304(a)(3)(A) (West 2000). The Income Tax Act contains its own construction rule, however, which states as follows: "Any term used in any [s]ection of this Act with respect to the application of, or in connection with, the

provisions of any other [s]ection of this Act shall have the same meaning as in such other [s]ection." 35 ILCS 5/1501(b)(3) (West 2000). Therefore, the Income Tax Act requires the term "person" to have the same meaning in arriving at both the denominator and the numerator of the sales factor. The "combined-apportionment" formula as prescribed by the Illinois Supreme Court is inconsistent with this section 1501(b)(3) requirement, because it uses a unitary business group's total sales as the denominator and an individual corporation's sales as the numerator for the calculation of the sales factor.

■■ Nevertheless, we conclude the inconsistency does not invalidate the combined-apportionment formula. This is because the legislative history indicates that, in approving section 304(e) of the Income Tax Act (35 ILCS 5/304(e) (West 2000)), the Illinois legislature accepted the Illinois Supreme Court's "combined-apportionment" formula. In 1981, the Illinois Supreme Court ruled the Income Tax Act approves the use of the combined-apportionment formula for application to the combined worldwide income of Caterpillar Tractor Company and its 25 subsidiaries, allowing each corporation to compare its individual Illinois data with the combined worldwide total of the entire unitary group. *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 109-10, 417 N.E.2d 1343, 1348 (1981). In 1982, the General Assembly passed an amendment that added section 304(e) to the Income Tax Act to require combined apportionment for taxpayers who, by statutory definition, are unitary business group members. Pub. Act. 82—1029, § 1, eff. December 15, 1982 (1982 Ill. Laws 2946, 2953). The legislature debated the merit of the worldwide combined-apportionment method as approved by the Illinois Supreme Court before adopting a domestic version that excludes from the unitary business group any member whose activities are carried on primarily outside of the United States. 82d Ill. Gen. Assem., House Proceedings, May 19, 1982, at 67-95; May 21, 1982, at 89-100; 82d Ill. Gen. Assem., Senate Proceedings, June 21, 1982, at 35-50; June 24, 1982, at 127-31, 133-50; December 2, 1982, at 30-34. The Illinois Supreme Court then acknowledged this legislative modification in *General Telephone Co.*, stating instead of the worldwide total, the domestic total of the unitary group should be used as the denominator. *General Telephone Co.*, 103 Ill. 2d at 372-73, 469 N.E.2d at 1072. Therefore, the legislature specifically authorized the application of the combined-apportionment formula as prescribed by the Illinois Supreme Court, despite the inconsistency with the statutory language of section 304(a)(3) (35 ILCS 5/304(a)(3) (West 2000)).

### D. Follett's Tax-Policy Arguments

■ Follett argues the Department's reading and application of the

sales "throw-back" statute is based on a patent misconception of the apportionment laws initiated by the Illinois Supreme Court in *GTE Automatic Electric, Inc. v. Allphin*, 68 Ill. 2d 326, 369 N.E.2d 841 (1977). Follett insists that the combined-apportionment method and the modern unitary business theory "compel the conclusion that a unitary business group is one 'person' under the Income Tax Act's apportionment regime." Follett also argues the Department's reading would encourage corporate shell games since Follett could make Follett Stores a wholly owned division to qualify as one "person" that is taxable in every sales state and avoid the application of the sales "throw-back" statute.

The Illinois Supreme Court has stated that it is not for courts to amend or change the law under guise of construction. *Koeppel v. Ives*, 92 Ill. 2d 523, 526, 442 N.E.2d 176, 177 (1982). In addition, "[t]he courts especially should avoid unnecessary interference with the system of taxation established by the legislature." *Koeppel*, 92 Ill. 2d at 527, 442 N.E.2d at 178.

We have determined that the Department's reading reflects the Illinois legislature's intent, and it is consistent with both the statutory language in the Income Tax Act and the Illinois Supreme Court's decisions. Therefore, we need not address Follett's tax-policy arguments.

### III. CONCLUSION

For the reasons set forth above, we affirm the trial court.

Affirmed.

TURNER and McCULLOUGH, JJ., concur.